May it please the Court, good morning. My name is Troy Tillman. I represent plaintiffs and appellants Michael Strauss and the Westwind Entities. I'd like to reserve a couple minutes for rebuttal. To summarize the two points, I want to make two points today, and that is, one, that the February 12, 2000 letter is not a claim, and I also want to address the defendant's argument that Mr. Strauss is essentially just asking for a double recovery, which he's not. The policy in question defines claim as a written demand against any insured for monetary damages or other relief. Neither of those fit the letter of February 12, 2003. First of all, as to monetary damages, you can't insure a contract obligation, and the policy in question specifically excludes breaches of contract from the policy. So the fact that the letter in question refers to the default on a loan and that the loan is now due and payable is not a demand for monetary damages for purposes of this D&O policy. Counsel, let me turn that argument on you for a moment. What is it about Judge Huss' decision that you think is wrong? Where did the judge get this incorrect? Well, I think she erred in a few respects. First, she noted that she thought that it was a demand for monetary damages, which it is not, and two, she found that the request for an accounting was a demand for other relief. Now, are there other California cases? California law governs this. Is that correct? That's correct. All right. Are there other California cases that characterize a demand for an accounting as either a claim or not a claim, an affirmative claim for relief? Yes, Your Honor. I believe it's the Foster case. It seems to me that if you look at the language of claim, it's couched in terms of some affirmative relief that's sought as opposed to simply monetary damages, and accounting would seem like some kind of an affirmative relief. Well, Your Honor, in the Foster case, it had the same definition of claim, and it suggests the definition of a claim as other relief suggests some legal remedy or at least that a claim is something more than a request for information addressed in legalese. That's at page 1048 of Foster. That's exactly what we have here. It's a request for information. What they're saying to the Westwind companies and the directors is, we don't like the way the finances of the company are going, and we want to know what you're going to do about it, and we want some information to determine whether the company is going up or down or what we should do about it. That is not a cause of action for an accounting as you would plead in a complaint. In fact, the Delaware complaint that was filed against these directors didn't even allege a cause of action for an accounting. They alleged a breach of duty relating to that, a breach of fiduciary duty. And so what they're calling for is not what we would call a legal remedy for an accounting. They're asking for information so they can make a determination of where the company is headed and what needs to be done to the company from that standpoint. And the court in Foster even noted that the policy could have been written and defined other relief as including requests for information that may ultimately result in a claim, and that's also at 1048. So even the court in Foster recognized the fact that a claim for other relief, if you're going to have a demand for an accounting of a business, you have to spell out that that's what you mean. If you would take Sheffield's reading of that, other relief to include a demand for an accounting, every time a lender makes a demand or a shareholder makes a demand or a partner makes a demand of a partnership for an accounting, which in this case and in all those other cases they were entitled to do under the contract, under the loans, they were entitled to ask for an accounting, you would have a flood of tenders to the insurance companies saying, hey, these shareholders, these partners made a demand for an accounting, so here, we're tendering it to you. That would be the result of what the district court judge did here. If you were trying to develop those flood gate arguments that are worth what they're worth, if you were trying to do a bright line test of when is a request for information, a request for monetary damages, what would that bright line be? Well, I think you have to look at the way it was written, the other relief. Other relief, for example, could mean some type of cease and desist from disparaging the company's product or stop defaming the company. In fact, the best example here is related to the rest of the text of the letter is they could have simply said, stop breaching your fiduciary duties. They do not say that. If you look at the words in the letter, they refer to the financial conditions of the company, that they're concerned, that they're interested in knowing what the directors are going to do about it. They remind the directors that they have fiduciary duties. They don't say they've breached those fiduciary duties, and they ask they be notified of what steps those directors intend to take to help the business. Well, is it your position that anything short of you owe us $100 million fails to satisfy the monetary damages definition of claim in this policy? No. I believe that you could seek monetary damages by simply saying that you have breached your fiduciary duties and we're going to sue you for some unknown amount. What about you've mismanaged the company? That doesn't say that, though. Well, as your characterization, would you have mismanaged the company, satisfy a claim for monetary damages? I don't know that, Your Honor. All I know is what is in the letter, and the letter does not say that you've mismanaged it. It does not say that they have done anything wrong. Well, it says, you know, I'm just looking at this letter again. Sure. I hadn't read it in a few days, but what it says in that paragraph, it's the third paragraph from the bottom. This starts as members of the board? Yes. Further into that paragraph, it says, In addition, as you may be aware, in the context of an insolvency, as members of the board of directors, each of you has a fiduciary duty to creditors of the borrowers, such as the master servicer on behalf of the trust. A breach of these fiduciary duties could subject each of you to personal liability. Right. It doesn't say that they have breached them. It just reminds them that they have duties, and if they do breach them, they would be subject to personal liability. That is not a claim. That's alerting them to the situation and saying that, and reminding them of what their duties are, and if in some time in the future they breach those, they may be responsible for it. Cancel it. Let me just ask this question. If this had been a claim, let's suppose that you all wanted this to be construed as a claim so you could then tender it to the company. This would have been Lumbermans at the time, right, when this letter came? Correct. So if you had tendered it, what would you have then contended flowed to you as the insured? Assume your position was if this was enough to constitute a claim, what would the insurer then have been obligated to provide? Well, that's a good question because Well, first of all, we didn't submit the letter. I'm not saying that. I understand that. Are you talking about Lumbermans or Sheffield? I'm talking about your hypothetical yourself on floodgates. If this is construed as a claim, then that means it should have been presented to Lumbermans when Lumbermans' policy was open. You said that shouldn't be the result because it will trigger floods of premature letters. The district court's ruling says, indeed, you should have tendered it. Therefore, accept the district court as a paradigm example of the flood of notices you say will be triggered. What would the insurance company have had to do upon receipt of that claim? Defend? Pay for the accounting? If the letter was considered a claim and we tendered it to whatever company that would be, then they would have had to defend. But the letter doesn't give you... Don't go... Okay, ignore the letter. I understand because you want to shift the coverage into the later carrier. I understand that. But as an insured, usually insureds are coming in and saying to us, the district court didn't give us coverage and we want coverage. And this should be a claim and they should have had the duty. Okay? So I'm trying to understand, looking to the larger context, is this is somewhat ironic that you're saying, these poor insurance companies are going to get hit with all of these claims. We're going to get hit with a lot of litigation over whether it is a claim one way or the other, apparently. And I'm trying to understand if there's any practical consequence. And since there's no claim for damages, so there's no... Well, Your Honor, I think at that point the carrier would probably say this is not a claim. I suspect that would probably be the case. That would be my answer to your question. And that was Lumberman's defense, I suspect, on the other side. So you were going to talk about double dipping. What was... Right. The issue there is... Didn't you get coverage under Lumberman's? We settled with Lumberman's. We got a partial summary judgment against them, and we settled with them. On what theory? What brought it within their policy? Well, they had a 60-day extension, which covered the complaint as well. So they were... But you didn't argue in that motion that it was... It never... That issue didn't really come up specifically. Okay, that's fine. So you were going to talk about double dipping. There's a cap, isn't there? Well, they would be entitled to an offset. You can have two policies at the same time. Isn't this policy, these two policies, are ultimately connected at some level higher up so that there was some agreement that any payments under one policy would be credited against the other? There was a tie-in arrangement, yes, I believe so, Your Honor. So we're not saying that if one policy is a million, the other policy is a million, that we get two million. It's a million. It's a million. The question, who's got the million in their pocket? Well, that's one issue, but the coverage issue, and we're not trying to double dip. They would... I suggest you were. Well, we admitted to them in our reply brief that they would be entitled to an offset for whatever we got from Lumberman's. All right. You're over time. Thank you, Your Honor. Good morning, Your Honor. May it please the Court. Brian Weiss for the defendant at Axis and Sheffield. I'm going to go first to the double-dipping argument since it's fresher on our minds there. I'm not sure that double-dip was the right choice of words if, in fact, that's what I used. But it's really a question of it's just kind of a really confusing situation because really under a claims-made policy only with one claim, only one policy or the other can apply. Your Honors may be familiar with, for instance, like construction defect litigation. We have continuous and progressive damage, and you have multiple carriers on the risk, and they talk about who should be defending what on that continuum. But on a claims-made policy with one claim, it's either one carrier or the other. Right. And what the plaintiff did here is they said, look, we're not sure which carrier ultimately is going to be held. Right. But the question is whether under this policy, under this language, this demand or this letter is a claim, a demand claim. And is Sheffield's position is that they should have, this letter triggered a claim, and had Sheffield been the operative policy, Sheffield would have honored this as a claim, would not have argued that, would not have been making all the arguments that they're now making as to why it's not. Well, if Sheffield had been the carrier on the risk on February 12th, 2003, I don't know what Sheffield would have done in response to this letter. They would have parsed it exactly as counsel's doing and said, there's no monetary demand here. Is that correct? I don't agree with that argument. Where's the monetary? Read me the language that says, we want money. Well, the letter says, basically, you've done all this bad stuff. You're letting this asset go. And it says the obligations under the loan are now due and payable. That's not an insured risk. I'm not sure where the policy says that the claim has to relate to an insured risk. You're saying the claim doesn't? No. Are you taking the position, counsel, that an uninsured claim gives rise to a duty to defend? It's a separate and distinct issue. I think if the claim demands monetary damages, then the next step is a determination of whether or not it's covered. But I don't back to that first step. I've read this now any number of times. You have one, it talks about the financial condition of the company. And it says each of the directors has a fiduciary duty to creditors. Is that a monetary demand? No. All right. Then it says a breach of those fiduciary duties could subject you to personal liability. Is that a monetary demand? No. And then it says we ask you to notify us what steps you are preparing to take with respect to the bids that have been received. Is that a monetary demand? No, but there's a part of the letter, I'm sorry, I don't have it in front of me, that says the obligations under the loan are now accelerated and due and payable now as a result of your mismanagement of the company. And to me, that's basically saying you have not performed as you promised to perform, and therefore monies that otherwise would not be owed now or immediately are now due and payable immediately. And the insurer shall not be liable for loss from any claim made against the policy based upon arising from or attributable to any actual or alleged contractual liability of the policyholder under any expressed contract or agreement. You're saying, well, they have to give you notice of the claim so that you can turn around and say, this is not covered by the plain language of paragraph 12. Well, this really isn't a notice case. What it is, it's an interrelated claim case. It's a claim. You have a complaint. And a claim is not covered. I'm sorry. I mean, notice would make more sense, but to say they're supposed to, as the insured, demand coverage on something that's clearly excluded based on a statement of fact in a letter. Sheffield's position has never been, you should have tendered this. This was a covered claim. Sheffield's position is simply that the complaint that did come in in April is related to this letter of February 12th, which was in itself a claim, not necessarily a covered claim. That's not what the policy language says. The complaint was an interrelated claim with respect to the February 12th letter, which if we say it's a claim, then it relates back to that. So this is not an argument of you failed to notify us of this letter, which then could get into issues of whether it's covered or not covered and whether they had a duty to tender it or not tender it. It's an interrelated claim issue, which asks the question of whether or not the complaint that came in in April was related to the claim, which was set out in the February 12th letter. Well, counsel, what I hear you just saying, to put it in the vernacular, is you don't have a dog in this fight. I mean, if we're here to decide if there was a claim made under the lumberman's policy, you just said you don't care. Well, that's the point I started to make, is that what happened here is that the plaintiff sued both lumberman's and Sheffield to hedge its bets because it didn't know which of the two carriers the court would find that the claim fell under. So the trial court found there is an order, an undisturbed summary adjudication order, that says this is a lumberman's claim. That order was never taken up on appeal. It was never challenged. It was never reversed. That's the order of the trial court. So what the plaintiff did from there, it then said to lumberman's, it said, okay, you're on the hook. Pay our defense fees, which were over a million dollars. Now, when they went into those negotiations, apparently they left money on the table. They didn't get fully reimbursed. I don't know why. We'd been let out by that time. But they left money on the table when they got that order in their favor against lumberman's that the trial court awarded them. That's what they wanted. That's what they asked for. They said, Your Honor, we want you to adjudicate that lumberman's owes us our defense fees. And that's exactly what they got. And why they left a couple hundred thousand dollars on the table in their negotiations with lumberman's after they got the judgment they asked for, I don't know. But that order, you know, to the extent that it might constitute the law of the case or whatever, is still intact. If we were to disagree with the district court, and I don't know. I mean, I don't know. I haven't decided anything about this case yet. But just so I understand what might happen here. If we were to conclude that this wasn't a claim and reverse the district court and send it back, why isn't everything you just told related to us? Why doesn't that all get presented to the district court to sort out? Well, that's ultimately what would happen. And I might have to argue for an offset there. But as we sit here today, the court would have to reverse an order that was in May. No, we didn't. No, we didn't. No? No, we just decided the cases would come up. Well, yeah, it would be. Well, we decide here. I mean, we just, you know, they presented the legal question to us is, does this letter satisfy the requirements of a claim under the policy? The district court said yes. They're just now trying to convince us that it. Right. No, I agree. There's a lot of unanswered questions that would have to be sorted out at the trial court level. So, I mean, your point is that even though they don't use the term, you can't point to any dollar amount in this letter or damages, that we should read it as a claim for damages. Well, the language of the policy is a demand for monetary damages or other relief. If it doesn't fit the classical definition of damages, it's certainly other relief. Let's just say this. You know, you have a hard day at work. You come home. You open up your mail. And there's a letter from some company you're doing business with. And the letter says, you're really messing up our investment or our work, you know, our project together. Things aren't going well. We're not happy with what you're doing. We want money from you now. It doesn't say a dollar amount. It doesn't say when it's due. It just says, we want money from you. It doesn't say that. It doesn't say that. I respectfully disagree. Where does it say it? It says, the obligations of the loan are now due. Oh, it's saying, buddy, if you don't shape up, you've got liability here. So you better shape up. I recall the letter talking about that, the obligations of the loan. Look, Nelson, if you're going to argue a case that turns on a document, it's a good idea to have the document in front of you and not paraphrase it to three judges who have it sitting in front of them. I have it right here in front of me. In fact, I'm reading from it. Sure. That's basic strategy. So I recall the letter saying that the obligations of the loan are now due. That's true. That was a statement of fact. No, but it's interesting. That paragraph says, as you have been advised, defaults, including payment defaults, have occurred. Under the loan, restructuring agreement, and since May 1, 2002, the obligations have been accelerated. So when you read that carefully, it sounds like there have been prior notices. And there were. So not that this letter is saying, you know, we're demanding that you pay now. It's sort of just recapping history. And then when you read the whole letter, you get down to the very end of the paragraph. It says, and, by the way, we are interested in the following. What does blah, blah, blah, blah, blah. And it goes on to say, oh, and by the way, we'd also request that you provide us with an accounting of the operations of borrowers over the past 24 months. And you read that in context, it looks like, as counsel argued, it looks like they're asking for information. Well, I would, again, respectfully argue that a demand for an accounting certainly falls within the umbrella of an other relief. And your position is Foster is not controlling on that question? I think that Foster was more of a request for information. This is a demand for an accounting, which is a recognized legal remedy under various. The contractual right they have to get information. Okay. Thank you. Do you think you do better than we did? I would like to clarify. Go ahead. Actually, two points. We're not taking sides here, but we are asking questions. That's fine. I want to make sure that the Court is clear. When the Court asked for a California case, Foster is not a California case. It's from the Central District of Illinois. I just want to point that out to you. I just want to make sure it's clear. And my one other point is, as counsel just said. Is there any California case? Well, there are California cases addressing similar issues, but not the direct. The Foster case had the exact same definition of a claim, and it's the most on point as far as the request for information and accounting. And that's why we sided. All right. Thank you. You're over time. Do you have anything you haven't already said? I just want to point out one more thing. And as the counsel just stated, is that the letter should have never, he said, should have never come in as a claim. That's it. He's saying that it's enough of a claim to constitute when the real claim comes in to draw it back in time to the complier. But that doesn't make it an interrelated claim. If it's not a claim, it's not a claim, and we're done. Okay. Got it. Thank you. Thank you.
judges: Fisher, Paez, Robart